**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cr-20341-ALTMAN**

**UNITED STATES OF AMERICA**,

*v.*

**ROLANDO RAMIREZ** *and*
**RASHEED ALI**,

    *Defendants.*

_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

On May 22, 2025, a jury convicted our Defendants, Rolando Ramirez and Rasheed Ali, of seven counts in connection with the shooting of Alex Vega. *See* Jury Verdicts [ECF Nos. 274, 275]. Count 2 charged the Defendants with "Interstate Stalking" in violation of 18 U.S.C. § 2261A(1). Superseding Indictment [ECF No. 102] at 2.  On October 22, 2025, Ali filed his Motion to Dismiss or for New Trial (the "MTD") [ECF No. 367], which Ramirez joined, *see* Motion to Join [ECF No. 373]; Paperless Order Granting Motion to Join [ECF No. 375]. As relevant here, the Defendants' Reply to the MTD [ECF No. 378] asked us to dismiss Count 2 or, in the alternative, to order a new trial. In that reply, the Defendants argued that, under the Interstate Stalking statute, "the only person whose reasonable fear is at issue is the target of the stalking," Mr. Vega. *Id.* at 2. As the Defendants correctly observed, however, "the indictment and [ ] the jury instructions . . . expanded the statute by claiming that the reasonable fear of any family member of the target satisfies the fear element." *Ibid.* (citing Jury Instructions [ECF No. 272]). The problem, the Defendants added, is that "[t]he [G]overnment argued and presented abundant evidence to the jury of fear experienced by [Mr. Vega's wife and son] in order to yield a verdict on *that* fear basis." *Ibid.* But the Government failed, the Defendants insisted, to introduce any evidence that the stalking caused Mr. Vega to feel fear. *See id.* at 3 ("It was an invalid theory submitted to the jury that they could find that the conduct placed a spouse

or intimate family member *in fear*.”). Because the Defendants raised this argument for the first time in their reply, the Government never had a chance to respond to it.

At the Defendants' sentencing hearing, *see* Paperless Sentencing Minutes [ECF No. 381], we granted in part and denied in part their MTD, *see* Paperless Omnibus Order [ECF No. 383]. In rejecting the part of the argument the Defendants have reraised here—*i.e.*, the jury-instruction argument they pressed only for the first time in reply—we noted that "the instruction[ ] came to [us] from the lawyers jointly," that the Defendants never objected to that instruction, and that the propriety of that instruction was therefore subject only to "plain error" review. Sentencing Transcript [ECF No. 436] at 18:10–12. And we concluded that "it's definitely not plain error" because "all of the evidence was about Mr. Vega fearing that he was going to die, he climbs to the bottom underneath his car in order to take his last breath. He feared that he was dying underneath his car." *Id.* at 18:25–19:3. "And so," we said, "there's no chance that the jury found the [D]efendant[s] guilty because of fear caused to a wife and son[.]" *Id.* at 18:3–5.

Even though the Defendants hadn't properly raised this argument—they asserted it, remember, only for the first time in reply—we allowed them to include it in a subsequent "motion for reconsideration." Sentencing Transcript at 140:10–12. On November 19, 2025, Ali filed this Motion for Reconsideration (the "Motion") [ECF No. 386], which Ramirez again joined, *see* Motion to Join [ECF No. 387]; Paperless Order Granting Motion to Join [ECF No. 388]. The Motion is now fully briefed and ripe for adjudication. *See* Government's Response in Opposition [ECF No. 412]; Defendants' Reply [ECF No. 415]. After careful consideration, we **DENY** the Motion.

## THE LAW

"Although the Federal Rules of Criminal Procedure do not specifically authorize motions for reconsideration, both the Supreme Court and [the Eleventh Circuit] have permitted parties to file such

motions in criminal cases." *Serrano v. United States*, 411 F. App'x 253, 255 (11th Cir. 2011).[1] "In ruling on a motion for reconsideration in a criminal case, federal district courts apply civil standards and exercise substantial discretion." *United States v. Marcelina Orozco*, 2020 WL 3963719, at *1 (S.D. Fla. July 13, 2020) (Bloom, J.). "As in civil cases, there are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *United States v. Grobman*, 548 F. Supp. 3d 1344, 1347 (S.D. Fla. 2021) (Altman, J.) (cleaned up).

"A motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)). The Eleventh Circuit has cautioned that "permitting the unlimited renewal or reconsideration of fully decided motions would needlessly tie up judicial resources and seriously delay the final disposition of cases." *United States v. Gupta*, 363 F.3d 1169, 1174 (11th Cir. 2004) (cleaned up). "It's thus well-settled that motions for reconsideration are disfavored and that relief . . . is an extraordinary remedy to be employed sparingly." *Britt v. IEC Corp.*, 2022 WL 3370216, at *2 (S.D. Fla. Aug. 16, 2022) (Altman, J.) (cleaned up).

### ANALYSIS

The Defendants ask us to "reconsider [our] prior decision denying [their] motion to dismiss Count 2 or in the alternative for a new trial." Motion at 1. As they explain, "Count 2 of the indictment charged" them with aiding and abetting "conduct that placed [Mr. Vega], *his spouse*, and *an immediate family member of [Mr. Vega]*, in reasonable fear of death and serious bodily injury to [Mr. Vega], in

---

[1] *See also United States v. Phillips*, 597 F.3d 1190, 1199 (11th Cir. 2010) ("The government correctly points out that the Supreme Court and this Court have permitted motions for reconsideration in criminal cases notwithstanding the fact that the Federal Rules of Criminal Procedure do not expressly provide for them[.]").

violation of Title 18, United States Code, Section 2261A(1)(A)(i–iii) and (2)." *Ibid.* (quoting Superseding Indictment at 2). That's a problem, as the Defendants rightly note, because "[t]he interstate stalking statute, 18 U.S.C. § 2261A(1)(A), does not provide for conviction if a defendant's conduct put a spouse or an immediate family member in reasonable fear; rather, it extends only to the conduct resulting in the person stalked being placed in a state of reasonable fear." *Ibid.* (cleaned up). "The government," therefore, "drafted and obtained an indictment on a theory going far beyond the limits of federal criminal law." *Ibid.* "Because the government obtained a grand jury indictment charging, and then proceeded to trial on the indicted theory, that the relevant-fear victims charged in Count 2 were at least three different people, including the stalking victim's spouse and an immediate family member, there was a failure to charge the relevant statutory offense." *Id.* at 1–2. In the Defendants' view, in short, the Superseding Indictment "allowed" the Government to introduce evidence at trial that "supported conviction on an invalid basis, in violation of the Fifth Amendment's grand jury and due process clauses and the Sixth Amendment's fair trial and notice guarantees." *Id.* at 2. As redress, the Defendants ask us to dismiss Count 2 or, in the alternative, to grant them a new trial. We'll do neither.

As an initial matter, the Defendants are right that both the Superseding Indictment and the jury instructions were wrong insofar as both accounted for the fear of Vega's wife and son, even though "the statute [§ 2261A] requires the Government to prove" that the Defendants' "conduct placed Vega"—and only Vega—"in reasonable fear of death or serious bodily injury." *United States v. Ali*, 2025 WL 2938420, at *3 (S.D. Fla. Oct. 16, 2025) (Altman, J.).[2] And we said as much at sentencing:

---

[2] *Compare* Jury Instructions at 18 ("Count 2, Interstate Stalking, charges that Rolando Ramirez and Rasheed Ali did willfully induce and procure Jaime Serrano and Julian Jimenez to travel from the State of New York to the State of Florida, with the intent to kill, injure, harass, and intimidate, and place under surveillance with the intent to kill, injure, harass, and intimidate, another person, that is, Alex Vega, and in the course of, and as a result of, such travel engaged in conduct that placed Alex Vega, his spouse, and an immediate family member in reasonable fear of death and serious bodily injury to

"It's true, by the way, that the Jury Instructions and the indictment don't correctly cite that part of the statute." Sentencing Transcript at 18:12–13. For three reasons, though, the Defendants aren't entitled to reconsideration.

*First*, the Motion doesn't present a proper ground for reconsideration because the Defendants merely rehash arguments we've *already* rejected. *Compare* Reply to the MTD at 4 ("The government's eliciting evidence related to the son's fear, combined with the instructional guidance on the legal significance of such fear, and the defective indictment, reveals that the constitutional error that occurred here cannot be deemed harmless."), *and id.* at 5 ("[T]he instructions given to the jury and the charge returned by the grand jury allowed for conviction upon a finding of fear experienced by the family member; a finding as to fear experienced by a family member was available to *supplant* an essential element of the offense—that is, the requisite fear experienced by Mr. Vega."), *with* Motion at 1–2 ("Because the government obtained a grand jury indictment charging, and then proceeded to trial on the indicted theory, that the relevant-fear victims charged in Count 2 were at least three different people, including the stalking victim's spouse and an immediate family member, there was a failure to charge the relevant statutory offense."). And "it is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through—rightly or wrongly." *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (cleaned up).

*Second*, the Defendants' two central arguments are barred by separate legal doctrines. The Defendants contend that *both* the Superseding Indictment and the jury instruction for Count 2 "supported conviction on an invalid basis[.]" Motion at 2. Their Motion thus advances two arguments:

---

Alex Vega."), *with* § 2261A(1)(A)(i) (noting that "whoever travels in interstate or foreign commerce . . . with the intent to kill, injure, harass, intimidate, or place under surveillance with the intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that places *that person* in reasonable fear of the death of, or serious bodily injury to, that person" violates the statute (cleaned up)).

(1) that the grand jury returned an improper indictment; and (2) that the jury instructions rendered the verdict invalid.

We can easily dispose of the Defendants' first argument—that "[t]he shift of the fear element onto the family observers who were not alleged stalking targets and who only saw the devastating aftermath rendered the count returned by the grand jury fatally deficient and warrants dismissal." Motion at 5. It's true that the Superseding Indictment included superfluous language, charging that the Defendants "engaged in conduct that placed [Vega], *[Vega's] spouse, and an immediate family member of [Vega]*, in reasonable fear of death and serious bodily injury to [Vega.]" Superseding Indictment at 2 (emphasis added). But "the presence of such surplusage in the indictment would not invalidate a conviction as long as the necessary [element] was also alleged and proved." *United States v. Miller*, 471 U.S. 130, 141 (1985); *see also United States v. Phillips*, 4 F.4th 1171, 1176 (11th Cir. 2021) (reiterating "that language in an indictment that goes beyond what the statute requires ordinarily does not become part of the charged crime. In fact, a district court can ignore parts of the indictment unnecessary to and independent of the statutory offense[.]"); *United States v. Mastrandrea*, 942 F.2d 1291, 1293 (8th Cir. 1991) ("Allegations in an indictment that are not necessary to establish a violation of the statute in issue are mere surplusage and may be disregarded if the remaining allegations are sufficient to charge a crime.").

Here, the Superseding Indictment alleges that the Defendants' conduct "placed [Vega], his spouse, *and* an immediate family member of [Vega] in reasonable fear[.]" Superseding Indictment at 2. Vega's fear (the necessary element) and his wife's and son's fear (surplusage) are therefore "connected by the conjunctive 'and,' meaning [the Government] must meet all three." *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021); *see also United States v. Garcon*, 54 F.4th 1274, 1278 (11th Cir. 2022) ("'And' means 'along with or together with.' So when 'and' is used to connect a list of requirements, the word ordinarily has a 'conjunctive' sense, meaning that all the requirements must be

met."). So, although the Superseding Indictment included superfluous elements, it also included the "necessary" element: that the Defendants' "conduct placed *Vega* in reasonable fear of death or serious bodily injury." *Ali*, 2025 WL 2938420, at *3 (emphasis added). "Convictions," the Supreme Court has told us, "generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment. A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored.'" *Miller*, 471 U.S. at 136 (quoting *Ford v. United States*, 273 U.S. 593, 602 (1927)).

Notably, in *Ford*, the Supreme Court upheld an indictment that charged a defendant with conspiring to import liquor in violation of various federal laws *and* a treaty. "The validity of the indictment [was] attacked . . . because it charge[d] that the conspiracy was to violate the treaty, although the treaty create[d] no offense against the law of the United States." *Ford*, 273 U.S. at 602. As here, even though the grand jury included the treaty allegation as part of the indictment, the Supreme Court upheld the conviction because "that part of the indictment [was] merely surplusage and may be rejected." *Ibid.* That's exactly what we have here.

Moreover, as we'll see in a moment, the Defendants were convicted *at trial* based on plenty of unrebutted evidence that Mr. Vega *himself* felt reasonable fear of death or serious bodily injury. That evidence—and the jury's verdict—thus cured any error that might have arisen from the surplusage the Defendants have identified in Count 2 of the Superseding Indictment. *See, e.g.*, *United States v. Martin*, 747 F.2d 1404, 1408 (11th Cir. 1984) ("An improper indictment is not necessarily reversible" and "may be cured by trial events."); *United States v. Meyer*, 2005 WL 8169014, at *3 (S.D. Fla. Mar. 15, 2005) (Middlebrooks, J.) ("A subsequent conviction by the petit jury renders 'any error in the grand jury proceeding connected with the charging decision harmless beyond a reasonable doubt.'" (quoting *People of Guam v. Muna*, 999 F.2d 397 (9th Cir. 1993) (cleaned up))).

The Defendants' second argument fares no better. Here, as the Defendants observe, the

"[j]urors were instructed that they could convict based on fear experienced by Alex Vega, his wife, or his son." Motion at 4. But the Defendants were the ones who submitted that erroneous instruction. When a defendant doesn't object to a specific jury instruction at trial, we typically review a post-conviction challenge to that instruction only for plain error. *See United States v. Burke*, 823 F. App'x 777, 782 (11th Cir. 2020) ("We review the legal correctness of an unobjected to aspect of a jury instruction for plain error."); FED. R. CRIM. P. 30 ("Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)," which provides the standard for plain-error review). "Where invited error exists," however, "it precludes a court from invoking the plain error rule and reversing." *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). The invited-error doctrine thus "prevents litigants from sandbagging district courts by 'introducing error at trial with the intention of creating grounds for reversal on appeal.'" *United States v. Duldulao*, 87 F.4th 1239, 1255 (11th Cir. 2023) (quoting *United States v. Stone*, 139 F.3d 822, 839 (11th Cir. 1998)).

That's exactly what happened here. The Defendants and the Government *jointly proposed* the jury instructions before trial. *See* Joint Proposed Jury Instructions [ECF No. 190]. As relevant here, for Count 2, the Defendants and the Government *jointly* proposed the following (incorrect) instruction:

> Count 2, Interstate Stalking, charges that Rolando Ramirez and Rasheed Ali did willfully induce and procure Jaime Serrano and Julian Jimenez to travel in from the State of New York to the State of Florida, with the intent to kill, injure, harass, and intimidate, and place under surveillance with intent to kill, injure, harass, and intimidate another person, that is, Alex Vega, and in the course of, and as a result of, such travel engaged in conduct that placed Alex Vega, his spouse, and an immediate family member in reasonable fear of death and serious bodily injury or death.

*Id.* at 27. At the charge conference, we reviewed that instruction with the parties and observed (mistakenly in retrospect) that "Count II looks fine to me," April 20, 2026, Transcript [ECF No. 450] at 178:9—a proposition neither side objected to. We ultimately made one typographical modification (irrelevant here) to the instruction the parties had jointly

proposed—altering "travel *in from* the State of New York" to "travel *from* the State of New York." *Id.* at 177:16 (Court: "You can take the 'in' out."). With that change, the final instruction we read to the jury looked like this:

> Count 2, Interstate Stalking, charges that Rolando Ramirez and Rasheed Ali did willfully induce and procure Jaime Serrano and Julian Jimenez to travel from the State of New York to the State of Florida, with the intent to kill, injure, harass, and intimidate, and place under surveillance with the intent to kill, injure, harass, and intimidate, another person, that is, Alex Vega, and in the course of, and as a result of, such travel engaged in conduct that placed Alex Vega, his spouse, and an immediate family member in reasonable fear of death and serious bodily injury to Alex Vega.

Jury Instructions at 18.

When we resumed the trial the following Monday, we went over the final jury instructions with all the lawyers and confirmed that *neither* the Defendants *nor* the Government had any objections—including to this specific instruction. *See* May 20, 2025, Transcript [ECF No. 451] at 16:6–7 (Court: "Count II. Any objections?" Defense Counsel: "No."). In other words, the Defendants are seeking dismissal on the basis of an instruction they *themselves* submitted—an instruction to which, when given the chance, they did not object. We won't be playing that game.

"Proposing the language of a jury instruction is 'a textbook case of invited error' under our precedent." *Duldulao*, 87 F.4th at 1254 (quoting *United States v. Maradiaga*, 987 F.3d 1315, 1322 (11th Cir. 2021)); *see also United States v. Ramirez*, 617 F. App'x 945, 947 (11th Cir. 2015) ("The doctrine of invited error applies where a defendant agrees to the court's proposed jury instructions, and review of the issue is waived even if plain error would result."). By proposing the *specific* language we adopted—the language they now claim was erroneous—the Defendants invited the error they now challenge. *See United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010) ("Frank invited error when he not only agreed with the supplemental instructions and special verdict form, but requested them. Therefore, he

9

has waived his right to challenge the district court's admission of these instructions.").[3] The

Defendants thus cannot seek relief from an erroneous instruction *they* proposed.

*Third*, even if we were to review the Count 2 instruction for plain error, we'd still deny the

Defendants' motion. As we explained at sentencing:

> [I]t's definitely not plain error, and here's why. The evidence was solely about Mr.
> Vega's fear, and so was the argument . . . . So all of the evidence was about Mr. Vega
> fearing that he was going to die, and then I guess he climbs to the bottom underneath
> his car in order to take his last breath. He feared that he was dying underneath his car.
> And so there's no chance that the jury found the Defendant[s] guilty because of fear
> caused to [Vega's] wife and son . . . about whose fear there was no evidence and as to
> whose fear there was no argument. So for that reason, given that there was no
> objection that was contemporaneous that would have allowed us to fix the error, the
> error is not plain, and I deny the motion to dismiss Count II.

Sentencing Transcript at 18:21–19:10 (cleaned up). In their Motion, the Defendants now (almost

comically) point us to *one word of* testimony from Mr. Vega's son. Here's how that evidence came out.

The Government asked Mr. Vega's son: "Did you feel scared?" and Mr. Vega's son replied: "Yeah."

Motion at 6 (quoting Adriel Vega Testimony [ECF No. 386-2] at 8:22–23). That's it. This one word is

---

[3] *See also Maradiaga*, 987 F.3d at 1322 ("Here, Maradiaga not only failed to object to the jury instructions at trial, he actually proposed the very instruction that he now challenges on appeal. This is a textbook case of invited error. By proposing the exact language that the district court adopted, Maradiaga invited any purported error. We therefore decline to review his challenge to the jury instructions."); *United States v. Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001) ("Accordingly, having agreed to the court's proposed instruction, Gage appears to have waived his right to challenge that instruction on appeal."); *United States v. Carter*, 776 F.3d 1309, 1323 (11th Cir. 2015) ("As an initial matter, where a defendant agrees to the court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result." (cleaned up)); *United States v. Bennett*, 2011 WL 4116721, at *2 (M.D. Fla. Sept. 15, 2011) (Covington, J.) ("In addition, it should be noted that if there was any error on the Court's part, the defendant's agreement to the jury instruction waives Bennett's right to raise this error."); *Lord v. Univ. of Miami*, 2023 WL 354276, at *10 (S.D. Fla. Jan. 23, 2023) (Altonaga, C.J.) ("Plaintiff's counsel not only proposed joint jury instructions that he affirmatively requested be given at trial, he also assured the Court he would not take issue with those instructions after the verdict was rendered. Therefore, Plaintiff 'induced or invited' the Court to rely on the Instructions that he now claims are erroneous." (quoting *United States v. Souffrant*, 517 F. App'x 803, 820 (11th Cir. 2013))), *aff'd sub nom. United States v. Univ. of Miami*, 2024 WL 3385796 (11th Cir. July 12, 2024).

what the Defendants now characterize as "abundant evidence" of the fear experienced by Mr. Vega's wife and son. Reply to MTD at 2. Based on this one word, the Defendants "move[ ] for reconsideration of [our] ruling based on the trial record indicating that the [G]overnment made ***fear experienced by the wife and the son a focus*** of its case." Motion at 6 (emphasis added).

This is absurd. To begin with, there was *no testimony* about any fear on the part of Mr. Vega's wife—so we're just not sure why the Defendants refer to "abundant evidence" of the wife's fear. And we wonder at the Defendants' lack of irony in their suggestion that the near-irrelevant one word of testimony from Mr. Vega's son—in a trial that spanned 14 trial days and covered some 3,642 pages of trial transcripts—somehow became "the focus" of the Government's case. To be completely candid, that one word was so fleeting, immaterial, and forgettable to the outcome of the trial that this Court had entirely forgotten about it until the Defendants mentioned it in their briefing.

But the bigger problem for the defense is that there *was* abundant evidence of fear at this trial—it just wasn't fear on the part of Mr. Vega's wife or son. It was, as anyone who paid any attention to this case can attest, evidence of the life-altering, blood-curdling fear experienced by Mr. Vega himself. He, after all, was the one (lest we forget) who "was shot many times at pointblank range." Sentencing Transcript at 16:8–9. At trial, Mr. Vega testified that, moments before the shooting, he "pull[ed] into the driveway" and stopped "[r]ight in front of the garage." May 5, 2025, Trial Testimony [ECF No. 441] at 658:22, 659:3. He then "start[ed] hearing this loud bang, bang," saw "smoke and glass everywhere," and then "realized, 'Shit, I'm getting shot.'" *Id.* at 659:20, 660:1–2. In haunting trial testimony, which went *entirely* unrebutted, Mr. Vega described what happened next:

> I hear like water and air coming out of my body, like that noise, that phest *(sic)*, like popping, and I said, "Shit, I'm hit." So I went, I put my hand in the back, and the minute I did that, I felt all the blood. . . . I didn't want [my wife] to see me die. *(crying)*. . . . I couldn't breathe already. It was like my whole life was—it's hard to explain, but my lung had collapsed. . . . And then I felt that there was another hole. At that point, I broke my shirt open. And I didn't have holes in front of me, so I said, "Oh, my God," I thought I was dying, because all I felt was like a pressure, and I couldn't breathe. I felt like I was dying.

*Id.* at 660:9–660:3 (cleaned up). At a *minimum*, Mr. Vega's testimony that he "couldn't breathe" and "thought [he] was dying," *id.* at 661:1–2—trial testimony that, again, the defense never even purported to contest, much less undermine—established that Mr. Vega "was in reasonable fear of [his] death," § 2261A(1)(A)(i); *see also id.* at 779:9–11 ("I got shot in front of my house, in front of my wife, in front of my kid. I almost died.").

But Mr. Vega told the jurors much more than that. He described the "three bullets" that lodged themselves inside his body: "One was in my shoulder, one went right next to my aorta in my heart, and the other one was in the center of the spine." *Id.* at 660:4–6. He recalled, in harrowing detail, his painful and terrifying ambulance ride, in which the paramedics "had to basically cut [him] . . . to get a tube [into his lungs] and get the blood out to breathe," *id.* at 674:8–10, because his "lung had collapsed," *id.* at 660:19. The paramedics, he added, "opened a hole to put a tube to take the blood out of [his] lungs." *Id.* at 678:20–21. He also described the tremendous pain *and* fear he experienced during his lengthy recovery. Although he had tried going without prescription pain pills, "the pain was so severe" that, "[with]in a couple of hours" of his release from the hospital, he "ended up having to go back to the hospital in an emergency so [that] they c[ould] stabilize the pain medication." *Id.* at 674:19–22.

He then underwent several surgeries to remove bullet fragments from his spine, aorta, and shoulder. *See id.* at 666:18–19 (Q: "Did you get surgery?" A: "Yes."); *id.* at 678:3 (testifying that "[a]ll three" bullet fragments were taken out); *id.* at 674:25–675:1 (attesting that he had surgery on his spine because "the bullet on the spine [ ] was causing all the pain"); 678:15–16 (noting that, during one of these horrific surgeries, "the heart surgeon cut me to remove the bullet next to my aorta"). Again, the Defendants didn't even try to undermine this testimony—which went wholly unrebutted before the jury.

As if all this weren't enough, Mr. Vega testified that the shooting "totally changed [his] life

12

completely." *Id.* at 683:22. He now rides around in "armored [ ] cars," owns "Belgian Malinois" that "can detect humans at a long distance," and employs "24-hour security" because it's "very hard for [him] to pull up to [his] house, just thinking somebody [is] hiding [there], still today." *Id.* at 683:22–684:4. In other words, Mr. Vega told the jury that, because of the Defendants' conduct, he *still* fears for his life. Mr. Vega is, it goes without saying, the one person in this story who was (and remains) unquestionably "in reasonable fear of [his] death" or of "serious bodily injury." § 2261A(1)(A)(i). And *that* fear—palpable and *truly* unforgettable—was brought to bear before the jury in raw and uncontested testimony.

"[W]hen applying plain error review, we may affirm a conviction where one of two multiple theories of liability was incorrectly instructed, so long as we are firmly convinced that the jury based its verdict on a properly instructed ground." *United States v. Rodriguez*, 591 F. App'x 897, 903 (11th Cir. 2015). In our case, we are firmly convinced—in fact, we have no doubt—that the jury based its verdict on a properly instructed ground. As we've said, the Government presented overwhelming and unrebutted evidence of Mr. Vega's reasonable fear of his own death. This included testimony from Mr. Vega about how terrifying it was to be shot multiple times, at point-blank range, in the shoulder, spine, and aorta; about what it felt like to have his lung fill with blood and then collapse; about the panic he experienced when he thought he might suffocate on his own blood and die in his garage; about the excruciating experience of having paramedics push a tube through his chest; about the stifling pain that required him to take prescription pills he didn't want; about the extensive surgeries he underwent to extract bullet fragments from his spine, shoulder, and aorta; and about the bullet-proof vehicles, human-sniffing dogs, and 24-hour security he employs to try to alleviate some portion of the paralyzing fear he's felt every single day since the attack. Against all this, the defense frivolously points us to the son's use of the one word "yeah" in response to an almost-tautological question about whether he was concerned for his father's safety. This one isn't close.

13

**CONCLUSION**

After careful review, we **ORDER and ADJUDGE** that the Defendants' Motion for Reconsideration [ECF No. 386] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on July 23, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record